UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Bankruptcy No. 11bk26652 |
| ) | |
| GIOVANNI BONOMI, ) | Chapter 7 |
| ) | |
| Debtor. ) | Judge Timothy A. Barnes |
| ) | |
| CARMINE MOLFESE and ) | |
| CARPET SERVICE INTERNATIONAL INC., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Adversary No. 13ap00119 |
| v. ) | |
| ) | |
| GIOVANNI BONOMI, ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM DECISION**

This matter is before the court for ruling following trial on the complaint of plaintiffs Carmine Molfese & Carpet Service International, Inc. (the "Plaintiffs") against debtor and defendant Giovanni Bonomi (the "Debtor"). The complaint seeks to bar the Debtor's discharge pursuant to section 727(a)(2) and (4) of the Bankruptcy Code on the grounds that he failed to disclose ownership interests in three corporations on his Schedules and Statement of Financial Affairs, substantially understated his income on his Statement of Financial Affairs, and fraudulently made false statements regarding his ownership interest in the three aforementioned corporations under oath. The Debtor contends that the undisclosed corporations were "worthless failed ventures" that never derived any income or economic benefit and he disclosed the entities to the Chapter 7 Trustee at his 341 Creditors Meeting(s).

At trial, Plaintiffs' counsel put on a minimal case. The Plaintiffs called two (2) witnesses – the Debtor and Carmine Molfese. The Debtor called three (3) witnesses – the Debtor, Carmine Molfese and Michael Collins. The minimal nature of the Plaintiffs' case appears to be a result of the Plaintiffs' overreliance on the numerous cases that appear to establish *per se* rules regarding section 727(a), especially those regarding 727(a)(4). That overreliance was an error, as it resulted in the Plaintiffs failing to carry their burdens as the moving party under this section, as is discussed below.

This Memorandum Decision restates and amends the oral ruling made on the record following the trial. The Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. Based on these findings, judgment will be entered in favor of the Debtor and against the Plaintiffs on the complaint. The Debtor's discharge will be granted. A separate order will be entered.

The court has jurisdiction to entertain this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Orders of the United States District Court for the Northern District of Illinois. *Britton Motor Serv., Inc. v. Krich (In re Krich)*, 97 B.R. 919, 920 (Bankr. N.D. Ill. 1988). This proceeding is a core matter in which this court has jurisdiction to enter final orders under 28 U.S.C. § 157(b)(2)(J).

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection. Fed. R. Bankr. P. 4005. Once a plaintiff has established that the acts complained of occurred, the burden of production shifts to the debtor who must then come forward with a credible explanation of his actions. *Clean Cut Tree Serv. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003) (Schmetterer, J).

2

DISCUSSION

1. Concealment of Assets

Section 727(a)(2) of the Code provides as follows:

(a) The court shall grant the debtor a discharge, unless—

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

        (A) property of the debtor, within one year before the date of the filing of the petition; or

        (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. § 727(a)(2).

The Seventh Circuit has stated that "complete financial disclosure [is] a 'condition precedent' to the privilege of discharge." *United States v. Ellis*, 50 F.3d 419, 424 (7th Cir.1995). This is consistent with the fiduciary duty owed by a debtor to his creditors. *See Peterson v. Scott (In re Scott)*, 172 F.3d 959, 967 (7th Cir. 1999) (*citing Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir.1991)).

The evidence has established that the Debtor failed to disclose on his Schedules and Statement of Financial Affairs his interest in Worldwide Scooters, Inc., Phase USA, Inc., and Sawtech, Inc. Further the Debtor may have failed to properly transfer his interest in KGM Power Tools, Inc.

The Plaintiffs also concentrate on the Debtor's inaccurate response to Question #1 of his Statement of Financial Affairs (regarding income from his businesses). The Debtor's testimony demonstrated that the Debtor, in response to Question 1 of the Statement of Financial Affairs, provided net amounts, and the Debtor's confusion over the issue was apparent to the court in his

3

testimony. The Debtor essentially carried over line 1 from his annual income tax Schedule D or line 13 from this 1040 income tax return, instead of line 1 from the Schedule D.[1]

The question before the court is whether those failed disclosures and inaccurate disclosures constitute concealment. With respect to the failed disclosures, the court concludes that it does.

The Seventh Circuit has stated that "'Concealment ... includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known.' *United States v. Turner*, 725 F.2d 1154, 1157 (8th Cir. 1984). *Cf.* Black's Law Dictionary 289 (6th ed. 1990) (concealment means the 'withholding of something which one knows and which one, in duty, is bound to reveal....')." *In re Scott*, 172 F.3d at 967.

While the Debtor argues that these failures to disclose are immaterial as they resulted in no harm, "[p]roof of harm is not a required element of a cause of action under Section 727." *Smiley v. First Nat'l Bank of Belleville (In re Smiley)*, 864 F.2d 562, 569 (7th Cir. 1989); *see also In re Snyder*, 152 F.3d 596, 601 (7th Cir. 1998).

Thus, with respect to the failed disclosures, the Debtor has committed concealment for the purposes of section 727(a)(2).

The court cannot reach the same conclusion regarding Question 1 of the Statement of Financial Affairs. The Statement of Financial Affairs presents this question in a confusing matter. Question 1 refers to the gross income the "debtor has received." The "has received" language causes debtors to believe this question means net, irrespective of the use of the term gross. *Stamat v. Neary*, 635 F.3d 974, 982 (7th Cir. 2011) (Recognizing the disconnect and stating that "[l]ike the district court ... we decline to resolve the question of what Question 1 specifically requires."). Such

---

[1] The Plaintiffs raise other examples of answers to the Statement of Financial Affairs and elsewhere that they believe also are actionable under section 727. The court has considered each of these additional arguments and finds them insufficiently supported, and nonetheless of insufficient materiality in light of the primary allegations to warrant individual attention here. The court therefore concludes that the disclosures and nondisclosures discussed herein are the only disclosures meriting further inquiry.

4

confusion is common, not only in this court but in others. *See, e.g., Rosetti v. Dranichak (In re Dranichak)*, Case No. 10-63042, Adv. Case No. 10-80059, 2012 WL 2342700 at *9 (Bankr. N.D.N.Y. June 20, 2012) ("[B]ased upon Debtor's testimony, which the Court found to be transparent and consistent with the evidence presented, it appears that the Debtor attempted to and believed he had in fact accurately disclosed his income. Even if he suspect that the gross income figures were erroneous … there is no indication that he was operating under a plan to mislead anyone, or to what end he might have made the attempt.").

So while the court concludes that failed disclosures are concealment, it concludes that the inaccurate disclosures are not.

With respect to the concealed disclosures, the Plaintiffs must also show that the Debtor intended to "hinder, delay or defraud a creditor."

"Because a debtor is unlikely to directly testify that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case." *Filmar, Inc. v White (In re White)*, 63 B.R. 742, 744 (Bankr. N.D. Ill. 1986) (Eisen, J.) (*citing In re Shumate*, 55 B.R. 489, 494 (Bankr. W.D. Va. 1985)). Judge Squires would have the court infer intent from the very fact of nondisclosure. *In re Krich*, 97 B.R. at 923. That, however, would create the kind of *per se* rule that would result in denial of bankruptcy relief for the "'honest but unfortunate debtor[s]' that bankruptcy laws were enacted to protect." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007) (*quoting Grogan v. Garner*, 498 U.S. 279, 287 (1991)). It would read out of section 727(a)(2) the important prerequisite of a finding of intent to hinder, delay or defraud, and take away the bankruptcy court's important role as the trial court on such matters. If Congress had intended nondisclosure alone to be enough, so divesting the trial court of its discretion, it would have said so in the statute.

5

So, the question becomes, have the Plaintiffs (which bear the burden of proof per Fed. R. Bankr. P. 4005) established under the facts and circumstances of this case that the Debtor has such intent. The court concludes that they have not.

There exists no credible evidence offered by the Plaintiffs in this regard other than the act of nondisclosure itself. There has been no pattern of behavior shown, evidencing an attempt to violate the duty the Debtor owed to his creditors.

Even if the Plaintiffs had met their initial burden in this regard, the court would conclude that the Debtor has, per *Costello*, 299 B.R. at 894, come forward with a credible explanation of his actions. The Debtor's unrebutted explanation regarding the defunct status of the corporations and the Debtor's demonstrated behavior regarding disclosure sufficiently demonstrates that the Debtor lacked the requisite intent with respect to the failed disclosures. Further, though not necessary given the court's finding above, the Debtor's unrebutted explanation regarding his understanding of Questions 1 and 2 of the Statement of Financial Affairs also sufficiently demonstrates that the Debtor lacked the requisite intent with respect to the inaccurate disclosures. The Debtor's testimony regarding his reliance on the accountant also seemed genuine and reasonable. *Cf. Dranichak*, 2012 WL 2342700 at *9.

The court therefore finds that, although the Debtor concealed the existence of and his ownership interest in three corporations, the Plaintiffs failed to show that the Debtor did so with the intent to "hinder, delay or defraud a creditor." Such a finding would hold true with respect to the inaccurate disclosures as well, had the court found them to be concealment. Judgment will be entered in favor of the Debtor and against the Plaintiffs on Count I of the Complaint

2.  False Oath

Section 727(a)(4) states that:

(a) The court shall grant the debtor a discharge, unless—:

6

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
>> (A) made a false oath or account; ... or
>
>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. § 727(a)(4).

The purpose of section 727(a)(4) is to enforce a debtor's duty of disclosure and to ensure that the debtor provides reliable information to those who have an interest in the administration of the estate. *Brandt v. Carlson (In re Carlson)*, 231 B.R. 640, 655 (Bankr. N.D. Ill. 1999) (Schmetterer, J.), *aff'd*, 250 B.R. 366 (N.D. Ill. 2000), *aff'd*, 263 F.3d 748 (7th Cir. 2001).

The Seventh Circuit has utilized a five-part test for determining whether to deny a debtor's discharge. *In re Hudgens*, 149 Fed.Appx. 480, 487 (7th Cir. 2005). Though unpublished and thus nonbinding, the *Hudgens* case serves to summarize existing Seventh Circuit law, and the test described then is useful and therefore adopted by the court. Per *Hudgens*, therefore, the Plaintiffs "must establish by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Id.*

It is in the satisfaction of these five elements, however, that the Plaintiffs' case comes up short. The Plaintiffs rely entirely on the nondisclosures and inaccurate disclosures previously discussed, without anything more. No other evidence adduced by the Plaintiffs materially advanced their case. The Plaintiffs appear to believe, especially in light of the strong language used by the Seventh Circuit in *Stamat*, 635 F.3d at 982, that they can simply show the inaccurate disclosures and thereby meet their burden under Rule 4005.

Such is not the case. Regardless of the whether a number of cases, when taken together, would appear to create a cascading set of *per se* rules that would allow for such a result and divest the trial court of its role, such could never be the result. As stated above, if Congress had intended nondisclosure alone to be enough, so divesting the trial court of its discretion, it would have said so in the statute. The Plaintiffs' confusion, however, is understandable given the myriad of opinions regarding this section, each seeming to establish a *per se* rule.

With respect to the first two elements of the test, the District Court for the Northern District of Illinois has utilized a *per se* rule first set out by a bankruptcy judge, stating that "[a] debtor's petition, schedules, statement of financial affairs, statements made at a § 341 meeting, testimony given at a Federal Rule of Bankruptcy Procedure 2004 examination, and answers to interrogatories all constitute statements under oath for purposes of § 727(a)(4)." *Neary v. Stamat*, No. 08–C–6543, 2009 WL 2916834, *2 (N.D. Ill. Sept. 2, 2009) (*quoting Structured Asset Serv. v. Self (In re Self)*, 325 B.R. 224, 245 (Bankr. N.D. Ill. 2005) (Squires, J.), *aff'd*, 635 F.3d 974).

Thus, it appears that, in order for the Plaintiffs to satisfy the first two elements under this reasoning, the Plaintiffs need only show that the Debtor's Schedules and Statement of Financial Affairs were false. As the court has already concluded, they have done so. As such, the first two elements of the test in *Hudgens* appear to have been established. That may indeed be the case, but such a conclusion cannot be reached in insolation without considering the remaining elements.

With respect to the third element, case law exists stating that sophisticated debtors may be charged with the knowledge of their false financial disclosures. *In re Yonkers*, 219 B.R. 227, 232-33 (Bankr. N.D. Ill. 1997) (Squires, J.); *cf. Stamat*, 635 F.3d at 982 (basing the harshly-worded ruling in part on "the [debtors'] level of education and business experience"); *In re Scott*, 172 F.3d at 970 (discussing expectations of sophisticated debtors under section 727(a)(3)). Thus while, simply showing a false statement does not establish that the debtor knew it was false, *In re Chadwick*, 335

8

B.R. 694 (W.D. Wis. 2005), the Plaintiffs again would have the court conclude that the simple act of nondisclosure, in and of itself, is enough to have the court conclude that the third element is satisfied for a sophisticated debtor. Again, that may be the case, but there remain two elements to consider first.

What remains to be established are the last two elements of the *Hudgens* test, fraudulent intent and materiality. As Judge Cassling of this court has stated:

> 'Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression.' *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998). To find the requisite degree of fraudulent intent, a court must find that the debtor knowingly intended to defraud or engaged in behavior that displayed a reckless disregard for the truth. *In re Yonikus*, 974 F.2d 901, 905 (7th Cir.1992). Reckless disregard for the truth is sufficient to prove fraudulent intent. *Stamat*, 635 F.3d at 982. Reckless disregard means 'not caring whether some representation is true or false....' *Chavin*, 150 F.3d at 728. If a debtor's bankruptcy schedules reflect a "reckless indifference to the truth" then the party seeking denial of the discharge need not offer any further evidence of fraud. *Costello*, 299 B.R. at 900. Direct evidence of intent to defraud may not be available. *Id.* Thus, the requisite intent under § 727(a)(4)(A) may be inferred from circumstantial evidence or by inference based on a course of conduct. *Yonikus*, 974 F.2d at 905.

*In re Chrispin*, Case No. 10-47833, Adv. Case No. 11-00443, 2012 WL 3126807 at *19 (Bankr. N.D. Ill. Jul 31, 2012) (Cassling, J.).

Based on the testimony at trial, the court cannot conclude from the facts and circumstances of this case that the Debtor had the requisite fraudulent intent. There has been little or no showing of either reckless disregard for or reckless indifference to the truth. There has been no showing that the Debtor did not care whether these representations were true or false. Other than, perhaps, reliance on the Debtor's accountant rather than confirming the accuracy of the disclosures regarding the income, the court cannot infer such recklessness from the facts of this case.

In fact, in comparing the testimony of the Debtor to that of Mr. Molfese, the court is given cause not to question the motives of the Debtor, but instead that of Mr. Molfese. Mr. Molfese made clear in his testimony that he held the Debtor responsible for all of his business losses, regardless of

9

who was actually to blame and who was legally culpable. Mr. Molfese did not, however, seek denial of discharge based on anything the Debtor may or may not have done with respect to him and very little evidence regarding the underlying business transactions was adduced. This is because, for reasons unknown, Mr. Molfese attempted to have the Debtor's discharge denied on a technicality alone.

It is this very type of situation that makes the court wary of applying across-the-board *per se* rules in the way the Plaintiffs would have it do. The trial court must have a role in evaluating the veracity of the witnesses. Allowing plaintiffs to deny a debtor a discharge – the ultimate goal of every individual bankruptcy case – because of inadvertent disclosures alone, would reward those with questionable motives while punishing honest but unfortunate debtors.

The problem of the *per se* rules is exacerbated if, as is urged by the Plaintiffs, the court were to read the remainder of the *Stamat* as just such a *per se* rule. As the court stated in its oral ruling on this matter, the facts of *Stamat* and this case are sufficiently aligned so as to remove from this court any discretion in that regard should it determine that *Stamat* left nothing for the trial court to do.

The remainder of *Stamat* to which the court refers is the discussion of materiality, the fifth element of the *Hudgens* test. That materiality is an issue is without question.

But what constitutes a material nondisclosure is certainly in question in light of *Stamat*. Prior to *Stamat*, the Seventh Circuit had affirmed a bankruptcy court's finding of immateriality regarding absent and inaccurate disclosures relating to a debtor's business. *In re Kitson*, 341 Fed.Appx. 234 (7th Cir. 2009).

The language of *Stamat* is unforgiving as to materiality, however. *Stamat* states:

> Finally, a fact is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Retz v. Samson, et al. (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010) (internal quotations and citations omitted); *see also Costello*, 299 B.R. at 900. "In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was

10

> detrimental to creditors." *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992) (quoting 4 Collier on Bankruptcy ¶ 727.04[1], at 727–59 (15th ed. 1992)). Other courts have held that the debtor "may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *Id.* (quoting *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)). In other contexts, we have stated that the "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 498 (7th Cir.2007) (quoting *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974)). Given that the omitted interests relate to the Stamats' estate and assets, we cannot find that the Stamats' omissions were immaterial.

*Stamat*, 635 F.3d at 982-83. Note the breadth of the quoted language in *Stamat*. That language does not narrowly relate only to business transactions, but instead relates to the debtor's estate. *Id.* at 982. Thus, any mistake on a sophisticated debtor's schedules or statement, as both relate to the debtor's estate – no matter how trivial or if corrected – would result in denial of discharge. Such would be the *per se* rule the Plaintiffs here espouse.

Here in lies the crux of the problem. The Plaintiffs have adduced no evidence showing that the failed disclosures were material. That burden, as part of the *prima facie* case of an action under 727(a)(4), falls squarely on the Plaintiffs. Fed. R. Bankr. P. 4005. In fact, the only testimony regarding the materiality of the nondisclosures came from the Debtor, whose unimpeached testimony is that these nondisclosures were immaterial. With respect to the corporations, they were either legally defunct or generating no or *de minimus* income.

There appears to be no pattern of concealment here. The Debtor believed his disclosures to be correct. When inquiry was made into the issue, the Debtor cooperated fully with that inquiry (including attending multiple § 341 meetings and providing additional information to the Chapter 7 Trustee at her request). It is not a glaring omission, given the status of the corporations and lack of income being generated therefrom. It was also not glaring given that this Debtor was managing multiple corporate entities, and disclosed the existence of the entities that were not defunct. It was not a sole, outlying asset that appears to have been intentionally concealed.

11

Even the most cursory examination of the facts of *Stamat* in relation to the foregoing shows that here is where the alignment between *Stamat* and this case ends. In *Stamat*, the debtor was actively trying to mislead the bankruptcy court, the trustee and the debtor's creditors. It was the trustee that was pursuing the debtor, in light of the egregiousness of the debtor's conduct. Here, the Debtor has fully cooperated and the trustee has fully cooperated and has fixed any mistakes in disclosure through full disclosure with the trustee. But for one creditor who would seek to trip up the Debtor on the accuracy of the initial disclosures, this case would be over.

The Plaintiffs waive *Stamat* like a flag, apparently believing that it has done their work for them. Reading *Stamat* the way they encourage, this belief would be validated. The fact that the Debtor had made a mistake on his schedules and statement – period – would result in denial of discharge, and here's how:

(1) The schedules and statements are sworn statements. *Neary v. Stamat*, 2009 WL 2916834, *2; *Self*, 325 B.R. at 245.

(2) The schedules and statements were not accurate, and thus they were false. The Debtor admits as much.

(3) The knowledge of such falsity is imputed to a sophisticated debtor. *Stamat*, 635 F.3d at 982; *In re Scott*, 172 F.3d at 970; *In re Yonkers*, 219 B.R. at 232-33.

(4) Intent may be inferred from the knowing misstatements, at the very least as reckless disregard for the truth. *In re Chrispin*, 2012 WL 3126807 at *19; *In re Krich*, 97 B.R. at 923.

(5) The misstatements are material, because, as noted above, schedules and statements relate to the Debtor's estate and mistakes relating to the Debtor's estate, no matter how trivial, are deemed material. *Stamat*, 635 F.3d at 982-83.[2]

So under the facts of cases such as this, reading the law the way the Plaintiffs urge, a plaintiff need only demonstrate a mistake – any mistake – by a sophisticated debtor on its schedules or statement, and discharge would be denied. The Plaintiffs need only tip one domino and the rest would fall into place, burdens be damned.

But law is not a game of dominoes, no matter how it appears on occasion.

First, we only reach this result by the collective application of *per se* rules. What one court rules in isolation should only cautiously and after great inquiry be applied in a broader perspective. If rules established in isolation that appear to dictate a result *per se* do anything in such circumstances, it would be to establish at most, a rebuttable presumption in favor of the *per se* result. There must always be some room for the trial court to apply the underlying statute itself.

Second, a closer reading of *Stamat* does not support the Plaintiffs' presumed *per se* reading. Under the facts and circumstances of that case, where a debtor was clearly manipulating the bankruptcy system, the result may seem justified. But porting those results to this case would neither be justified by the facts nor by a strict reading of *Stamat*. Very little of the language quoted above from *Stamat* is in fact a holding of the Seventh Circuit. Instead, much of it appears to be the Circuit canvassing the law of different courts. Some of the most harshly worded language, including the language about a debtor's estate, comes from that canvassing. *Stamat*, 635 F.3d at 982. Further, regarding the debtor's fraudulent intent, the Seventh Circuit makes clear that it will not disturb the trial court's finding of

---

[2] I understand that the mistakes here related to Debtor's business and the *Stamat*'s language includes business misdisclosures, but I use the broader category to underscore the absurdity of the result.

intent for the reasons stated. It is not holding of the Circuit that those reasons are definitive in other matters, and sets no standard for the lower courts to apply. *Id.*

So then, the court is left with either the question of whether the presumptions set forth as (1)-(5) on pages 12-13 have been rebutted, or, in the alternative, whether the court has independently found intent. The court concludes that these are, in fact, the same inquiry. Herein lies the role of the trial court.

As stated above, the Plaintiffs have adduced no evidence of fraudulent intent, nor have they adduced evidence from which the court can infer fraudulent intent. There appears to be no pattern of concealment here and the Debtor believed his disclosures to be correct. As previously noted, when inquiry was made into the issue, the Debtor cooperated fully with that inquiry and offered full disclosure. The Debtor's testimony was credible and convincing; Mr. Molfese's was neither.

Regardless of what line of reasoning the court would choose to adopt, the conclusion would be the same. The Debtor came forth with a credible explanation of his actions. The Plaintiffs have failed to establish intent, one of the required elements of the statute. Any *per se* presumption has been successfully rebutted. Judgment will be entered in favor of the Debtor and against the Plaintiffs on Count II of the Complaint.

## CONCLUSION

Therefore, judgment will be entered in favor of the Debtor, and the Debtor's discharge will be granted.

Dated: February 14, 2014

_____
Hon. Timothy A. Barnes
United States Bankruptcy Judge